

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00099-CR

EARNIE AMOS BARBER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Delta County, Texas
Trial Court No. 7230

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

A jury convicted Earnie Amos Barber of aggravated assault of his girlfriend, Cynthia Ann Hinds, with a deadly weapon.[1] Barber was sentenced to fifteen years' imprisonment. On appeal, Barber argues that the trial court erred (1) in denying his motion for a medical expert who might be able to testify that Hinds' injuries were not caused by the alleged weapon, (2) in admitting the alleged weapon that was brought to trial by Hinds over objections to its chain of custody, and (3) in sustaining the State's objection to his closing argument suggesting that Hinds' injuries were caused by a rifle during a scuffle for control of the weapon. We find that Barber was not entitled to the appointment of a medical expert in this case. We further find that Barber failed to show that the trial court abused its discretion in either admitting the alleged weapon or sustaining the State's objection to Barber's closing argument. Consequently, we affirm the trial court's judgment.

## I.       Factual and Procedural Background

Hinds was employed as a pediatric critical care nurse, a job which she had held for thirty-two years despite her recreational use of methamphetamine. Prior to the incident giving rise to this case, Hinds and Barber, who also used methamphetamine, had been living together for three years. The relationship between Hinds and Barber was, at times, quite tumultuous. According to Hinds, Barber often became physically abusive with her when she refused to succumb to his repeated demands for oral sex. Hinds explained that she never reported the abuse to police

---

[1] The State's indictment alleged that Barber caused bodily injury to Hinds "by hitting her in the face with a metal . . . tank."

because Barber threatened to kill her if she did. She also testified that she stayed with Barber because he threatened to report her methamphetamine use to the Board of Nursing if she ever left him.

Hinds testified that she and Barber used methamphetamine on the night before she was assaulted and that, soon thereafter, Barber began demanding oral sex. Hinds refused, which angered Barber and eventually led him to accuse Hinds of having an affair. Hinds' denials of Barber's accusations led to a heated argument that culminated with Barber confiscating Hinds' car keys and cell phone, eliminating any possibility of Hinds leaving or calling for help. Barber then warned Hinds that he would not allow her to go to work the next morning without gratifying his sexual desire.

Hinds was awakened at 5:30 a.m. the following morning by Barber's renewed demands for oral sex. Hinds, who had resolved to ignore Barber's demands, went to the kitchen where she began making pancakes for breakfast. Shortly thereafter and without warning, Barber grabbed Hinds by the hair and threw her into the living room, ripping the hair from her head. Barber then shoved the barrel of a loaded rifle against Hinds' forehead and demanded that she identify the man with whom she was having an affair. Hinds, once again, denied this accusation, and Barber became enraged.

Barber next lit a metal propane plumber's torch and drew the flame close to Hinds, presumably in an effort to extract a confession from her. Hinds' repeated denial of his accusations did little to assuage Barber, and he at one point warned Hinds, "[Y]ou're going to die today." When he heard a sound at the door, Barber paused the inquisition, laid down his rifle,

3

and went to the door to investigate. Hinds saw this unexpected interruption as her opportunity to gain control of Barber's rifle; however, in her anxious state, when she grabbed the rifle, she accidentally engaged the bolt–action mechanism, causing a single, unfired shell to eject from the rifle and fall to the floor. As Hinds fumbled to get the shell back into the gun, Barber swung the metal propane tank with a plumber's torch attached and struck her squarely in the face. Hinds recalled, "[A]ll I could see was blood."

Barber's blow was so severe that it fractured several of Hinds' teeth in their sockets. In addition, Hinds suffered a shattered nose, two black eyes, and multiple facial lacerations. As the blood was streaming from Hinds' face, Barber remarked, "Look what you made me do." Barber gathered a towel and some ice so that Hinds could treat herself, and he gave her a saucepan to catch the blood as it poured from her wounds. Barber then decided he needed a shower to remove Hind's blood from his body. To prevent Hinds from escaping, Barber forced her to sit in the bathroom while he showered. After showering, Barber told Hinds to sit in a recliner in the living room, and he told her that she could bleed to death as far as he was concerned.

By this time, Hinds was late for work, and she also failed to make her weekly Monday morning telephone call to her sister, Sheri Daneen Strickley. Strickley, who was aware of Barber's abusive treatment of Hinds, grew concerned when she did not receive Hinds' telephone call, which prompted her to contact Hinds' employer. Strickley became more concerned when she learned that Hinds had not reported for work that day. Strickley next called Hinds directly, and Barber instructed Hinds to answer the phone. As Barber stood over her, Hinds explained to

4

Strickley that she had missed work because she had fallen and injured herself. Disbelieving the story, Strickley asked Hinds if she needed help, Hinds replied, and Strickley called 9-1-1.

Officer Jonathan Scott Painter was the first to arrive at the house to investigate. Painter described Hinds as "badly beaten, bloody, . . . [with] eyes [that] were basically swollen [shut]." In response to Painter's questions, Barber claimed that Hinds fell from the front porch. Because Painter saw no evidence of a fall from the porch, he dismissed Barber's story and restrained him. Hinds parroted Barber's tale of a fall from the porch until Painter placed Barber in his patrol car. After Barber was placed in the patrol car, Hinds revealed to Painter that Barber struck her in the face with a blue, metal propane bottle. Investigator Jeremy Norsworthy also responded to the 9-1-1 call. During Northworthy's interview of Hinds, she revealed that she grabbed the rifle to protect herself from Barber's imminent attack and stated, once again, that, after shoving the rifle away from her, Barber struck her with a propane tank. Norsworthy testified that Hinds sounded like she was choking on blood.

Hinds was transported to Hunt Regional Medical Center by ambulance and was then airlifted to Baylor University Medical Center in Dallas due to doctors' concerns that Hinds might have suffered a skull fracture. A notation in Hinds' medical records from Hunt Regional Medical Center states, "She was hit on her left side of the head with propane tank." Notations in Hinds' Baylor medical records state, "Patient reports she was assaulted with a small, handheld propane bottle. She says that her boyfriend hit her with the bottom of it." During the course of her hospital visits, medical personnel stitched the lacerations on Hinds' face and treated her shattered nose. Hinds sustained permanent bruising from the attack.

5

While Hinds received medical treatment, Painter and Norsworthy took photographs of the scene. In addition to Hinds' beaten and bloodied face, photographs showed the hair that was ripped from her head, the saucepan filled with Hinds' blood, and several trails and pools of blood throughout the house. When asked by Painter about the location of the propane tank Barber had used during the assault, Hinds simply pointed him in a general direction within the house. Painter walked in the direction Hinds indicated and eventually located a blue, metal propane tank. There was no torch attached to the tank recovered by Painter. Nonetheless, Painter photographed the tank for evidentiary purposes.

At trial, Painter's photograph of the blue, metal propane tank was admitted into evidence without objection. After its admission, Hinds testified that there were two propane tanks in the house, that Painter's photograph did not actually depict the weapon used by Barber, and that the tank in Painter's photograph was similar to the metal tank she was hit with, except that a torch was attached to the actual weapon used. Hinds brought to trial the tank she claimed was used in the assault, with the torch attached. Painter and Norsworthy both testified that the tank in Painter's photograph and the tank Hinds brought with her to trial appeared to be the same type of tanks. Over objection, Painter testified that a metal propane tank is capable of causing death.

After hearing the evidence, the jury found (1) that Barber caused bodily injury to Hinds "by hitting her in the face with a metal . . . tank" and (2) that the metal tank was a deadly weapon. The jury convicted Barber of aggravated assault.

**II.     Barber Failed to Establish his Entitlement to an Appointed Medical Expert**

We review the denial of a request for a court-appointed medical expert for an abuse of discretion. *Ake v. Oklahoma*, 470 U.S. 68, 81–83, 86 (1985); *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998).

Barber, who was indigent at the time of trial, asked the trial court to appoint an independent medical expert to assist in his defense. Specifically, Barber argued,

> Your Honor, I believe they're saying that the butane tank was a deadly weapon. And obviously the butane tank in and of itself is not a, per se, deadly weapon, but only in the manner and use of that butane tank.
>
> And when they -- when they try and prove manner and use of that butane tank, it's going to go to what injuries did that cause and what injuries did that not cause. And so that's why I -- another reason that I really need a medical expert to say, okay, we ran all these tests, and they may or may not have shown that an item such as a butane tank was used as a deadly weapon.

Concluding that medical testimony was not necessary to establish whether the metal tank caused bodily injury or whether it was used as a deadly weapon, the trial court overruled Barber's request.

On appeal, Barber argues that the trial court erred in overruling his motion for the appointment of a medical expert, relying on *Ake*, which found that the appointment of a psychiatrist was necessary to assist the defendant in that case on the issue of his sanity at the time of the offense. *See Ake*, 470 U.S. at 76. We disagree with Barber's contention and opine that his reliance on *Ake* is misguided.

"[W]here an indigent defendant establishe[s] a substantial need for an expert, without which the fundamental fairness of his trial will be called into question, *Ake* requires the

7

appointment of an expert regardless of his field of expertise." *Rey v. State*, 897 S.W.2d 333, 338 (Tex. Crim. App. 1995). However, to receive court-appointed expert assistance under *Ake*, an indigent defendant first must make a "preliminary showing of a significant issue of fact on which the State would present expert testimony, and which the knowledge of a lay jury would not be expected to encompass." *Jackson v. State*, 992 S.W.2d 469, 474 (Tex. Crim. App. 1999). "The question in each case must be not what field of expert knowledge is involved, but rather how important the scientific issue is in the case, and how much help a defense expert could have given." *Rey*, 897 S.W.2d at 338.

The State was not required to present expert testimony on any of the issues of fact which Barber claims required the appointment of a medical expert. The questions Barber sought to answer through the appointment of a medical expert were (1) whether a metal tank was used in the assault, (2) whether the metal tank caused bodily injury to Hinds, and (3) whether the metal tank could constitute a deadly weapon. Hinds' first-hand account of the incident established that a metal tank was used in the assault and that the metal tank caused bodily injury to her. The State introduced evidence of fifteen photographs depicting the bodily injury that was caused to Hinds, and it is well-established that either expert testimony or lay testimony may be sufficient to support a deadly weapon finding. *English v. State*, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983); *Wilson v. State*, 391 S.W.3d 131, 137 (Tex. App.—Texarkana 2012, no pet.).

Further, "[i]n order to make the required threshold showing for the appointment of an expert under *Ake*, the indigent defendant's claim must be based upon more 'than undeveloped assertions that the requested assistance would be beneficial.'" *Williams v. State*, 958 S.W.2d

8

186, 192 (Tex. Crim. App. 1997) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n.1 (1985)). A defendant must also show more than the mere conclusions of defense counsel. *Norton v. State*, 930 S.W.2d 101, 111 (Tex. App.—Amarillo 1996, pet. ref'd). The defendant must show both that there exists a reasonable probability that an expert would be of assistance and that denial of expert assistance would result in a fundamentally unfair trial. *Davis v. State*, 905 S.W.2d 655, 659 (Tex. App.—Texarkana 1995, pet. ref'd) (citing *Moore v. Kemp*, 809 F.2d 702, 712 (11th Cir. 1987)). "Thus, in Texas, an indigent defendant will not be entitled to funding for experts absent adequate factual support in the written motion that he presents to the trial judge." *Ex parte Jimenez*, 364 S.W.3d 866, 881 (Tex. Crim. App. 2012) (upholding trial court's denial of informal, off-the-record request for appointment of expert in absence of written motion and affidavits supporting defendant's request). The record in this case does not contain a written motion seeking appointment of a medical expert. Moreover, Barber did not show that a medical expert would be able to determine or express any opinion as to whether the trauma caused to Hinds was caused by a metal tank as opposed to some other instrument.

Because Barber failed to make the threshold showing that the appointment of a medical expert was required in this case, we find no abuse of discretion in the trial court's decision to overrule Barber's motion for the appointment of a medical expert. We overrule Barber's first point of error.

### III. The Trial Court Did Not Abuse its Discretion in Admitting the Tank Brought by Hinds

Hinds brought a blue, metal propane tank equipped with a torch with her to Barber's trial. During her direct examination, Hinds testified that the tank/torch assembly she brought to court

was the actual weapon used by Barber during the assault. Barber objected to the admission of the tank and torch on the sole ground that the chain of custody had not been proven. The trial court overruled the objection and admitted the tank/torch assembly into evidence.

This Court reviews a trial court's decision to admit evidence under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The mere fact that a trial court may exercise its discretion in a different manner than would an appellate court under similar circumstances does not demonstrate that an abuse of discretion has occurred. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

Under the Texas Rules of Evidence, the requirement that evidence be authenticated or identified is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). This Rule "does not require the State to *prove* anything." *Silva v. State*, 989 S.W.2d 64, 67–68 (Tex. App.—San Antonio 1998, pet. ref'd) (emphasis in original); *see also Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd). Instead, "[i]t requires only a showing that satisfies the trial court that the matter in question is what the State claims; once that showing is made, the exhibit is admissible." *Garner*, 939 S.W.2d at 805; *Ingram v. State*, 213 S.W.3d 515, 521 (Tex. App.—Texarkana 2007, no pet.). Evidence may be authenticated or identified by different methods, including testimony from a witness with personal knowledge that an item is what it is claimed to be. TEX. R. EVID. 901(b)(1); *Ingram*, 213 S.W.3d at 521 (citing *Fluellen v. State*, 104 S.W.3d 152, 162 (Tex.

10

App.—Texarkana 2003, no pet.)). Objects that are easily identifiable and substantially unchanged normally do not require the introduction of a chain of custody. *See, e.g.*, *Outland v. State*, 810 S.W.2d 474, 475 (Tex. App.—Fort Worth 1991, pet. ref'd) (pistol seized from defendant's automobile and identified by officers together with no evidence of tampering was sufficient even though pistol not marked when seized).

Proof of the beginning and end of the chain of custody is sufficient; a proponent of evidence does not need to show a "moment-by-moment" account of the evidence to support its admission. *Shaw v. State*, 329 S.W.3d 645, 654 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).[2]

The trial court does not abuse its discretion in admitting evidence where it reasonably believes that a rational juror could find that the evidence has been authenticated or identified. *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007) (citing *Jackson v. State*, 968 S.W.2d 495, 499 (Tex. App.—Texarkana 1998, pet. ref'd)). Here, it was reasonable for the trial court to believe that a rational juror could have found that Hinds' testimony properly authenticated and identified the tank/torch assembly she brought to trial as the actual weapon Barber used during the assault. Thus, Hinds' testimony was sufficient to authenticate the exhibit,

---

[2]Hinds testified that the torch was full of propane at the time of the assault but that it was no longer full at the time of trial. For the first time on appeal, Barber argues that Hinds' testimony establishes that the tank was tampered with. Barber also argues, for the first time on appeal, (1) that the tank could have been co-mingled with another tank, (2) that the tank could have been purchased after the fact, and (3) that the tank was not previously produced for Barber's inspection prior to trial despite his request to discover "all physical evidence alleged to be in the instrumentality of the crime for which Defendant stands indicted." It is well established that an issue raised on appeal must be the same issue raised by motion or objection asserted at trial. TEX. R. APP. P. 33.1(a); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (holding nothing preserved for review if issue on appeal does not comport with objection at trial). Barber failed to preserve these complaints since he did not raise them with the trial court. Consequently, we will not address the issues on appeal.

11

and the trial court did not abuse its discretion in overruling Barber's objection. We overrule

Barber's second point of error.

**IV.  The Trial Court Properly Sustained the State's Objection to Barber's Closing Argument**

We review a trial court's ruling on an objection to improper jury argument for an abuse

of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet.

ref'd); *see Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010).

During closing argument, Barber made the following argument over the State's objection:

> [Defense Attorney]: But she said consistently she picked up the rifle, she was jacking with it, she was going to shoot him. He took the rifle away from her. There was a scuffle. And you know what popped her in the nose? I'm sorry, guys. This is the only picture we have of what popped her in the nose, was that scope [of the rifle].
>
> [State's Attorney]: Judge, I'm going to have to object; arguing outside the record.
>
> [Defense Attorney]: It's a perfectly -- perfectly reasonable assumption from the evidence of what could have happened.
>
> [State's Attorney]: Just no testimony to that whatsoever.
>
> THE COURT: I'll sustain the objection.

Permissible jury argument falls into one of four categories: (1) summation of the

evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument of opposing

counsel, or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim.

App. 2008); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000). Barber believes that

his jury argument constituted a reasonable deduction from the evidence. Lawyers are permitted

to express reasonable deductions so long as they are based on the evidence in the record and do

12

not constitute unsworn testimony. *Penry v. State*, 903 S.W.2d 715, 756 (Tex. Crim. App. 1995) (per curiam).

Here, Hinds testified that, as she attempted to re-load the rifle, Barber hit her with the propane tank. Although Norsworthy testified that Hinds claimed Barber shoved the rifle as he hit her almost simultaneously with the tank, there was no testimony of a scuffle over the rifle Hinds was holding. Further, there was no evidence that Barber had the rifle at the moment of the assault with a deadly weapon or that he struck Hinds with the rifle. Thus, Barber's argument that there was a struggle over the rifle was improper. Improper jury arguments include references to facts not in evidence. *Phillips v. State*, 130 S.W.3d 343, 355 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006). Considering the evidence, we cannot say that the trial court abused its discretion in finding that there was no evidence to support the argument that Hinds was hit by the rifle during a scuffle to control it instead of by a metal tank.[3] Because abuse of discretion has not been shown, we overrule Barber's last point of error.[4]

---

[3]It is unclear whether Barber was arguing that Hinds' injuries were self-inflicted. If so, in the absence of a struggle over the rifle and given the extensive nature of Hinds' injuries, the trial court could also rationally conclude that the theory of a self-inflicted injury was not a reasonable deduction from the evidence.

[4]No curative instruction or motion for mistrial was sought by the State.

13

## V.    Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     February 26, 2014
Date Decided:       April 24, 2014

Do Not Publish