**James Clearnon INGRAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–06–00049–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Nov. 22, 2006.

Decided Jan. 9, 2007.

Lana Johnson–Johnston, Tyler, for appellant.

Danny Buck Davidson, Dist. Atty., Carthage, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

James Clearnon Ingram was convicted by a jury for selling a controlled substance at a location within 1,000 feet of a playground. Two enhancement convictions were also alleged. Ingram chose to have the trial court assess his punishment—which it set at forty-five years' imprisonment. The evidence shows that Ingram sold six rocks of crack cocaine (less than one gram) to an undercover officer. The question raised is whether the evidence also shows the sale occurred in a drug-free zone.

On appeal, Ingram contends the evidence is insufficient to prove that the

1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon 2003).

2. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(3), (b)(1) (Vernon Supp.2006).

3. The statute does provide other options for proving an offense was committed within a

transaction occurred within 1,000 feet of a playground or that the facility was open to the public; that two jurors were improperly seated; and that the State inadequately proved the chain of custody of the controlled substance.

The charge presented to the jury at the guilt/innocence phase merged the offense, which was delivery of a substance in penalty group 1 in an amount which would have made the offense a state-jail felony,[1] with a separate section which raises the punishment levels for a delivery made in a drug-free zone.[2] No complaint was made that the punishment issue was submitted with the guilt/innocence portion of the charge.

## I. SUFFICIENCY OF THE EVIDENCE

Under the statute, the offense is punishable as a state-jail felony under Section 481.112(b) of the Texas Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 481.112(b). However, if it is shown at the punishment phase of the trial that the offense was committed within 1,000 feet of a playground, it is punishable as a third-degree felony.[3]

■ In relevant part, the Code defines a playground as any outdoor facility that:

(A) is intended for recreation;

(B) is open to the public; and

(C) contains three or more separate apparatus intended for the recreation of children, such as slides, swing sets, and teeterboards.

drug-free zone: a premises "owned, rented, or leased by an institution of higher learning, the premises of a public or private youth center, or a playground;...." TEX. HEALTH & SAFETY CODE ANN. § 481.134(b)(1). Here, the State alleged only that the facility was a playground, and that allegation was followed in the guilt/innocence jury charge.

Tex. Health & Safety Code Ann. § 481.134(a)(3).[4]

## A. The Evidence

The undercover officer, who made the buy, Chad Taylor, testified Ingram sold him the drugs near a playground owned by the Turner Alumni Association and that it was 560 to 580 feet from the site of the buy. Taylor testified there was a baseball field, equipment consisting of a merry-go-round, swings, a couple of sets of slides, and some climbing toys at the playground site. Deputy Sheriff David Jeter testified that the transaction took place 552 feet from the recreational area with a margin of error of ten to twenty feet, based on his measurements, and that there was a baseball field there with five or six pieces of playground equipment.

■ In a factual sufficiency review, we view all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the verdict. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *see Watson v. State*, 204 S.W.3d 404 (Tex.Crim. App.2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson*, 23 S.W.3d at 7.

## B. The Arguments

Ingram specifically complains the evidence is insufficient because there is no evidence the outdoor recreational facility was within 1,000 feet of the transaction. He also contends the evidence does not show the outdoor recreational facility was open to the public—and thus was not proven to be a location defined as a "playground" by the statute. As set out above, to enhance the punishment, the State must prove the offense was committed within 1,000 feet of an outdoor facility used for recreation and which is open to the public. The State's reply, essentially, is that, because it was a children's playground in a residential area, and because there was no evidence it was fenced or enclosed, it was a reasonable inference it was open to the public. We note that city-owned public playgrounds are often fenced, but are in fact open for public use, and do not agree that fencing or the lack thereof would be dispositive. Regardless of the importance of such evidence, in this case there is no evidence concerning fencing of this facility.

## C. Does the Evidence Prove That This Is a Drug–Free Zone?

■ There is clearly factually and legally sufficient evidence to support a conclusion that the area was an outdoor recreational facility and that the sale occurred within 1,000 feet of the facility. It is equally apparent the facility was part of a now-closed school and is currently operated and owned by the Turner Alumni Association. The question remains as to whether there is evidence the facility was open to the public.

There is no direct evidence the facility was open to the public. The question is actually whether the jury could reasonably infer from the evidence before it the facility was public in nature. The ownership of

4. The jury was not given an instruction defining the term "playground," but there was no objection to the charge. We must judge the sufficiency of the evidence measured by the elements of the offense as defined by the hypothetically-correct jury charge for the case. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

the park by an alumni association, generally a private organization, does not assist in the determination that the park is open to the public. The fact that a baseball field was on the property adds little, as there is likewise no proof that it is open to use by the public. The fact the property was located near a residential area and contained playground equipment shows no more than that some children may use the facility—not that the public at large had access or permission to use the property. It is not uncommon for a group of homeowners in a neighborhood to provide a playground and limit its use to the children living in the neighborhood.

This record contains nothing else that supports the conclusion the outdoor recreational facility was open to the public. The statute contains no presumption in that regard, and we cannot assume from the evidence provided, or from any reasonable inferences raised from that evidence, that the facility was one that was open to the public.

Accordingly, we must conclude there was no evidence to support the enhancement of punishment of the state-jail felony under Section 481.134(b) to a third-degree felony. Because the court assessed punishment, there is nothing explicitly setting out the range of punishment utilized in the sentencing process.

The State alleged Ingram had been previously convicted of two prior felony offenses. The court assessed punishment at forty-five years' confinement, so it is evident the court considered the two prior felonies to enhance the punishment by virtue of Section 12.42 of the Texas Penal

Code. *See* TEX. PENAL CODE ANN. § 12.42 (Vernon Supp.2006). However, Section 12.42 limits state-jail felonies from its reach for habitual felony convictions. The specific language is that, if "it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has been finally convicted of two felony offenses ....," the twenty-five to ninety-nine years or life range of punishment is to be utilized. TEX. PENAL CODE ANN. § 12.42(d). However, if the state-jail felony is punishable under Section 12.35(a) and the defendant has previously been convicted of two felonies, sequentially, then punishment is for a second-degree felony. TEX. PENAL CODE ANN. § 12.42(a)(2). If the evidence had shown this offense was committed in a drug-free zone (in this case, within 1,000 yards of a playground, as defined), punishment would not be controlled by Section 12.35(a) of the Texas Penal Code, but by Section 481.134(b) of the Texas Health and Safety Code. However, since there was no evidence the offense was committed within 1,000 yards of a playground as defined by the statute, Section 481.134(b) does not control the punishment range and punishment is governed by the general rule for state-jail felonies—Section 12.35(a) of the Texas Penal Code. Hence, the offense is a state-jail felony governed by Section 12.35(a), and the maximum punishment for such an enhanced state-jail felony is twenty years' confinement. TEX. PENAL CODE ANN. § 12.42(a)(2). Consequently, we must reverse for a new punishment hearing to allow the punishment to be set within the range allowed by law.[5]

---

5.  We note the trial court never pronounced a finding on the enhancement allegations. Since another trial on punishment is required, such omission is inconsequential to the holding in the case. However, we recognize authority holding that, while it is better practice for the trial court to make an oral pronouncement regarding its findings on punishment enhancement allegations, a trial court does not err when it overlooks making that pronouncement, especially when the issue of sentencing is submitted to the trial

Because there was no evidence that would support a finding that the location at issue was a playground, the "drug-free zone" allegation was not proven and the conviction remains nothing more than a state-jail felony [6]—and the punishment assessed is clearly outside any range possible for a state-jail felony conviction, even had the punishment been properly enhanced. Accordingly, we must reverse for a new punishment hearing.

## II. *BATSON* ISSUE

We now turn to Ingram's other contentions of error about the trial. He also contends the trial court used an improper procedure in remedying the State's exercise of peremptory strikes in the context of the racial composition of the jury. The trial court sustained a *Batson*[7] motion and seated two of three excluded African–American jurors. Ingram did not object to this procedure and did not object to the two particular jurors being added to the panel. It thus appears Ingram received the relief he sought and did not further complain about the trial court's action. The error presently claimed has not been preserved for appellate review. *See* TEX.

R.APP. P. 33.1. The contention is over-ruled.[8]

## III. NECESSITY OF CHAIN OF CUSTODY FOR CONTRABAND

Ingram next contends the trial court erred by admitting evidence about the controlled substance without providing adequate proof of the chain of custody. He contends in a brief argument that because the State did not provide a "chain of custody" affidavit as allowed by Article 38.42 of the Texas Code of Criminal Procedure, the contraband was inadmissible. TEX.CODE CRIM. PROC. ANN. art. 38.42 (Vernon 2005). The affidavit provides a way to authenticate evidence without the necessity of live testimony—but does not limit the right to introduce admissible evidence relevant to the chain of custody. TEX.CODE CRIM. PROC. ANN. art. 38.42, § 2.

No objection was made to the trial court concerning the introduction of the contraband. Therefore, nothing is preserved for appellate review. *See* TEX.R.APP. P. 33.1(a).

Even if the issue had been preserved, no error is presented. The State

---

court rather than a jury, as we stated in *Newby v. State*, 169 S.W.3d 413, 416 (Tex. App.-Texarkana 2005, no pet.) (citing *Garner v. State*, 858 S.W.2d 656, 659 (Tex.App.-Fort Worth 1993, pet. ref'd)). However, a closer reading of *Garner* also shows the trial court made a finding of true in the judgment, and the Fort Worth court found that sufficient. In this case, we have neither oral nor written findings of true, and the judgment has the notation "N/A" regarding a finding on enhancement even though the offense is shown as "1st Degree Felony Enhanced."

**6.** The conviction, not the punishment, determines enhancement. *See Fite v. State*, 60 S.W.3d 314, 320 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); *Arriola v. State*, 49 S.W.3d 374 (Tex.App.-Fort Worth 2000, pet. ref'd); *Hadnot v. State*, 851 S.W.2d 378, 379 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd).

**7.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

**8.** Ingram's counsel has also, in two unsupported sentences in her brief, stated that Ingram's right to a speedy trial was violated. There is no argument, no citation to the record or authority provided to support that statement. The issue has not been adequately presented for our review. A contention that is conclusory and cites no authority presents nothing for review. *Garcia v. State*, 887 S.W.2d 862, 871 (Tex.Crim.App.1994). We find this point of error to be inadequately briefed and decline to address it. *See* TEX. R.APP. P. 38.1(h); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App.1992).

provided a proper chain of custody for the contraband. The testimony showed that Ingram delivered the drugs to Officer Taylor, that Taylor placed them in a plastic bag, took them to his office in Henderson, and delivered them to David Salazar, who secured them in an evidence locker. Later, Charles Garrett, a Department of Public Safety (D.P.S.) officer, took the drugs from the locker to the crime laboratory in Tyler, where they were kept in a secure vault. The supervising forensic scientist at the D.P.S. laboratory retrieved them from the vault and delivered them to court in a sealed envelope.

Even before the Texas Rules of Evidence were adopted, the chain of custody went to the weight rather than to the admissibility of the evidence. *DeLeon v. State,* 505 S.W.2d 288, 289 (Tex.Crim.App. 1974). The Texas Rules of Evidence do not specifically address the chain of custody issue—they simply provide that the authentication or identification necessary as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *Fluellen v. State,* 104 S.W.3d 152, 162 (Tex.App.-Texarkana 2003, no pet.); *see* TEX.R. EVID. 901(a).

Ingram has suggested no way in which the proof was inadequate to support such a finding—instead, the entire argument focuses on the lack of a "chain of custody" affidavit. The affidavit is not required. Error has not been shown. The contention of error is overruled.[9]

Accordingly, we affirm the trial court's judgment as to the conviction, but reverse the trial court's judgment as to punishment. We remand the case to the trial court for a new punishment hearing in accordance with this opinion.

---

9. In the final sentence of the brief, complaint is made that failure to object to the introduction of the evidence denied Ingram a fair trial. If this was intended to raise an issue on ineffective assistance of counsel, we find this passing reference, which was not raised by any point on appeal and lacks any citation or analysis, to be inadequately briefed and we decline to address it.