

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00043-CR
_____

JOHN RAYMOND LANDIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 22148

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Lindell Bradford Brown died as a result of injuries sustained in a two-vehicle accident in Fannin County shortly before Christmas 2006. The other vehicle's driver, John Raymond Landis, was subsequently charged with intoxication manslaughter. *See* TEX. PENAL CODE ANN. § 49.08 (Vernon Supp. 2008). A Fannin County jury found Landis guilty and returned a sentence of seventeen years' imprisonment. Landis now appeals, raising several points of error. We overrule his contentions of error and affirm the trial court's judgment.

I.       **Admission of the Blood Sample**

In one point of error, Landis contends the trial court erred by admitting the laboratory test results of a blood sample drawn from him shortly after the accident in question. Landis's theory of why the trial court erred rests on either of two alternatives: (a) that the requirements of Section 724.012(b) were not met or (b) that "a proper chain of custody pertaining to the blood sample was not provided prior to testimony regarding its analysis." The exhibits at issue are State's Exhibit 16 (a toxicology report from the Texas Department of Public Safety's (DPS) Crime Laboratory in Austin) and State's Exhibit 13 (155 pages of Landis's medical records from Methodist Dallas Medical Center).

A.       **Section 724.012 of the Texas Transportation Code**

Generally, law enforcement may not take a specimen of a suspect's blood without that person's consent. TEX. TRANSP. CODE ANN. § 724.013 (Vernon 1999). There are, however,

2

exceptions to this general prohibition. One such exception arises when the suspect has been involved in a motor vehicle accident in which another person has died or might die. More specifically, our law provides,

> (a)  One or more specimens of a person's breath or blood may be taken if the person is arrested and at the request of a peace officer having reasonable grounds to believe the person:
> > (1)  while intoxicated was operating a motor vehicle in a public place, or a watercraft; or
> > (2)  was in violation of Section 106.041, Alcoholic Beverage Code.
> (b)  A peace officer shall require the taking of a specimen of the person's breath or blood if:
> > (1)  the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft;
> > (2)  the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense;
> > (3)  at the time of the arrest the officer reasonably believes that as a direct result of the accident:
> > > (A)  any individual has died or will die; or
> > > (B)  an individual other than the person has suffered serious bodily injury; and
> > (4)  the person refuses the officer's request to submit to the taking of a specimen voluntarily.
> (c)  The peace officer shall designate the type of specimen to be taken.
> (d)  In this section, "serious bodily injury" has the meaning assigned by Section 1.07, Penal Code.

TEX. TRANSP. CODE ANN. § 724.012 (Vernon Supp. 2008).

The appellate record in this case shows Landis consented to providing officers with a blood specimen. Therefore, the State did not have to present evidence to show the officers could reasonably rely on Section 724.012 to take a specimen of Landis's blood without his consent. Landis

may not rely on Section 724.012 as a basis for contending that the trial court erred in admitting the analysis of the consensual blood draw.

### B.  Chain of Custody

Landis further contends the trial court abused its discretion by admitting, over his objection, "the physical evidence of the blood test and the lab results because the State failed to establish a chain of custody for the blood evidence."

A defendant who affirmatively states, "No objection," when evidence is offered waives his right to complain on appeal that the evidence was erroneously admitted. *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986); *Malone v. State*, 163 S.W.3d 785, 794 (Tex. App.—Texarkana 2005, pet. ref'd).  When State's Exhibit 13 was offered for admission, Landis stated he had "No objection."  Landis, therefore, waived his right to complain on appeal about the trial court's decision to admit Exhibit 13.

The record shows Landis did not, at trial, challenge the State's failure to prove chain of custody for State's Exhibit 16.  Instead, Landis's trial objection to State's Exhibit 16 concerned whether the laboratory report tracking numbers corresponded with the various officers' testimonies. By failing to challenge Exhibit 16's chain of custody at trial, Landis cannot now raise this complaint on appeal.  *See Lucero v. State*, 246 S.W.3d 86, 98 (Tex. Crim. App. 2008); *Parson v. State*, 193 S.W.3d 116, 125 (Tex. App.—Texarkana 2006, pet. ref'd); *see also* TEX. R. APP. P. 33.1(a)(1).

Additionally, the propriety of an exhibit's chain of custody goes to that exhibit's weight rather than its admissibility. *DeLeon v. State*, 505 S.W.2d 288, 289 (Tex. Crim. App. 1974); *Ingram v. State*, 213 S.W.3d 515, 521 (Tex. App.—Texarkana 2007, no pet.). Landis cannot now properly rely on his appellate objection to the chain of custody as a basis for contending the trial court erred by admitting the analysis of the consensual blood draw.

We overrule Landis's challenge to the trial court's decision to admit the laboratory results of his blood test.[1]

## II.    Admission of Laboratory Analysis of Drug Paraphernalia

In another appellate issue, Landis contends the trial court "erred in admitting the lab analysis of the marijuana and paraphernalia because a proper chain of custody was not provided prior to testimony regarding its analysis." Landis's appellate complaint concerns State's Exhibits 16A through 20.

At trial, Landis raised his chain of custody challenge with respect to the admission of these exhibits. Thus, this issue was preserved for appellate review. However, as noted above, the propriety of an exhibit's chain of custody goes to that exhibit's weight rather than its admissibility. *DeLeon*, 505 S.W.2d at 289; *Ingram*, 213 S.W.3d at 521. The trial court committed no error by admitting these exhibits over Landis's chain-of-custody challenge.

---

[1]We also note that Landis did not object to the admission of State's Exhibit 11, which included the plastic bag containing the marihuana at issue.

5

## III.    Evidentiary Sufficiency

Finally, Landis contends the evidence is both legally and factually insufficient to support his conviction. Landis contends that "[e]ven if the State's evidence of the blood intoxication level is accepted, there is still no connection made between that and the accident."

In a legal sufficiency review, we examine the evidence from the court below, as measured by the hypothetically correct jury charge, in the light most favorable to the trial court's judgment. *Grotti v. State*, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, at *15 (Tex. Crim. App. June 25, 2008) (not designated for publication); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge sets forth the applicable law, is authorized by the charging instrument, does not necessarily increase the State's burden of proof or restrict the prosecution's theories of criminal liability, and adequately describes the particular offense for which the accused is being tried. *Grotti*, 2008 Tex. Crim. App. LEXIS 761, at *23; *Malik*, 953 S.W.2d at 240.

A factual sufficiency review requires us to assess all the evidence adduced at trial in a neutral light. *Grotti*, 2008 Tex. Crim. App. LEXIS 761, at *15 (citing *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); and referencing *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)). We must then determine whether the jury was rationally justified in finding the accused guilty beyond a reasonable doubt. *Id.* (citing *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006)). "Evidence can be factually insufficient in one of two ways: (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and

6

(2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust." *Id.* (citing *Roberts*, 220 S.W.3d at 524; *Watson*, 204 S.W.3d at 414–15; *Johnson*, 23 S.W.3d at 11; and referencing *Castillo v. State*, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007)). To hold that the evidence is factually insufficient, we must be able to state objectively that the verdict is against the great weight and preponderance of the evidence. *Id.*; *Roberts*, 220 S.W.3d at 524; *Watson*, 204 S.W.3d at 417. Like a legal sufficiency review, a factual sufficiency review requires that the evidence be measured under the framework of the hypothetically correct jury charge. *Id.* at \*15; *Wooley v. State*, No. PD-0861-07, 2008 Tex. Crim. App. LEXIS 762 (Tex. Crim. App. June 25, 2008).

Intoxication manslaughter is a result-oriented offense. TEX. PENAL CODE ANN. § 49.08; *cf. Perez v. State*, 216 S.W.3d 855, 857 (Tex. App.—Corpus Christi 2006, pet. ref'd) (manslaughter is result-oriented offense). The statutory elements the State must prove are (1) the defendant; (2) on or about the date alleged in the indictment; (3) operated; (4) a motor vehicle, aircraft, watercraft, or amusement ride; (5) while intoxicated; and (6) by reason of that intoxication; (7) by accident or mistake; (8) caused the death of an individual. TEX. PENAL CODE ANN. § 49.08; *see also Daniel v. State*, 577 S.W.2d 231, 233 (Tex. Crim. App. [Panel Op.] 1979); *Martinez v. State*, 883 S.W.2d 771, 773 (Tex. App.—Fort Worth 1994, pet. ref'd). The indictment alleged Landis did

> then and there operate a motor vehicle in a public place while the said defendant was intoxicated by not having the normal use of mental or physical faculties by reason of

7

the introduction of a combination of marijuana, and controlled substances into the body, and did by reason for such intoxication cause the death of another, namely Lindell Bradford Brown, by accident or mistake, to wit: by driving said motor vehicle into the person of said injured party.

Therefore, the applicable hypothetically correct jury charge would, in this case, require proof that (1) Landis; (2) on or about December 8, 2006; (3) operated; (4) a motor vehicle; (5) while intoxicated; and (6) by reason of that intoxication; (7) by accident or mistake; (8) caused the death of Brown. With these thoughts in mind, we turn to a review of the evidence presented to the jury.

Jared Ball, Krystal Clark, and Brittany Hill each testified that on the afternoon of December 8, 2006, Landis arrived at the house occupied by Ball and Clark and appeared to be intoxicated. Ball described Landis's speech that day as being slurred. Landis also seemed unsteady on his feet, a fact to which Clark also testified. When asked by the prosecutor whether he thought it was safe for Landis to drive on that day, Ball responded, "I can't say so." Hill offered similar testimony, telling the jury, "I told Krystal that she needed to say something to him [Landis] because he was -- he shouldn't have -- he could barely walk, much less drive." On cross-examination, none of the witnesses remembered seeing Landis consume any drugs or alcohol in their presence.

Tammie Hayes was driving her vehicle on the evening of December 8, 2006, on Highway 898 in Fannin County. While driving on Highway 898, she was passed by a white pickup truck being driven in an erratic manner. The truck was weaving in and out of its lane and driving into the oncoming lane of traffic. Hayes then decided to follow the white pickup truck. Eventually, both Hayes and the driver of the white pickup truck stopped at the same location. The driver of the truck

8

exited, and Hayes described the driver as "a boy . . . he was just kind of, well, wobbling, just wobbling around is what you would say." The driver eventually approached Hayes's vehicle, which prompted her to call 9-1-1. On cross-examination, Hayes admitted she did not see the driver of the white pickup truck consume alcohol or drugs in her presence. On redirect, Hayes identified the driver of the white pickup truck as being the Appellant.

Grover Russell came in contact with Landis shortly before the accident at issue in this case. According to Russell's testimony, Landis appeared intoxicated at the time. Russell admitted on cross-examination that he never saw Landis consume any alcohol or narcotics on the date in question.

Wade Lowery witnessed the accident that resulted in Brown's death. He offered the following description of events:

> I was coming along 78 going north towards my house. A truck come off of 121, got right in front of me. We topped that hill, started coming down and it just started just veering off left into the oncoming traffic and it hit a truck that was going south, and the truck that it hit spun around behind me and went off in a ditch behind me and hit a tree. And the one that veered off, it spun around, the tires broke off of it, went in the ditch, and it eventually stopped right directly in front of my road.

Carolyn Malone also witnessed the accident at issue in this case. Immediately following the crash, Malone went to aid Landis. Malone then heard Landis admit that he had been drinking earlier. Landis also admitted that he had smoked marihuana.

Paramedic Wade Jackson responded to the scene of the accident. He testified that he believed that Landis had admitted to using illegal drugs before the accident.

9

Troopers Cory Hale and Eric Estes of the DPS—Highway Patrol responded to the accident in question. During his investigation, Hale found marihuana laying right outside the driver's door on the roadway next to Landis's truck; Hale also found a marihuana pipe inside Landis's truck. Hale also told the jury that he contacted a fellow DPS trooper to meet Landis at an area hospital with a blood draw kit because, based on what other witnesses told Hale and the drug use evidence he found in Landis's vehicle, Hale suspected the accident was a result of Landis's drug use. On cross-examination, Hale admitted he found no evidence in Landis's truck to suggest Landis had been smoking marihuana at the time of the accident. Estes testified that Landis "had slurred speech" and had admitted to smoking marihuana prior to the accident.

Trooper Dexter Barkley, also of the DPS—Highway Patrol Division, met Landis at Dallas Methodist Hospital. Barkley testified that he told Landis at the hospital that he and other police officers had reason to believe that drugs or alcohol were a contributing factor in causing the wreck in which Landis was involved. Barkley then requested a blood sample from Landis, which Landis provided following Barkley's reading of the required statutory warning and consent form.

Lisa Skinner works for Methodist Health Systems in Dallas and analyzed the blood taken from Landis by the hospital on December 8, 2006. Landis's blood test results were positive for benzodiazepines, cocaine, amphetamines, and marihuana. Testing of Landis's blood by the DPS crime laboratory showed similar results: Landis's blood was positive for high amounts of methamphetamine, amphetamine, Alprazolam, and cocaine.

10

Dr. Jeffrey Barnard, the chief medical examiner for Dallas County and the director of the Southwestern Institute of Forensic Sciences, performed the autopsy of Brown. Dr. Barnard said Brown's death was the result of the blunt force injuries and severe blood loss (nearly half his blood volume) that Brown sustained in the automobile accident.

We believe this evidence was legally and factually sufficient to prove, beyond a reasonable doubt, that Landis, on or about December 8, 2006, operated a motor vehicle while intoxicated (by reason of ingesting alcohol, marihuana, other controlled substances, or any combination thereof), and by reason of that intoxication, by accident or mistake, caused the death of Brown. Accordingly, we overrule Landis's challenges to the evidentiary sufficiency.

## IV.    Conclusion

For the reasons stated, we overrule each of Landis's appellate issues and affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:      November 12, 2008
Date Decided:        November 13, 2008

Do Not Publish

11