**Affirmed and Opinion filed August 28, 2018.**



In the

# Fourteenth Court of Appeals

### NO. 14-17-00145-CR

**QUENTON DEWAYNE GRAVES, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 21st District Court
Washington County, Texas
Trial Court Cause No. 17568**

## O P I N I O N

Appellant Quenton Dewayne Graves was convicted by a jury of possession of cocaine between one and four grams. *See* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), 481.115(c) (West 2017). The jury found in a special issue that appellant committed the offense in a drug-free zone. *See id.* § 481.134(c). In a single issue, appellant argues the evidence is legally insufficient to support the finding that he possessed cocaine in a drug-free zone. We affirm.

## I.  BACKGROUND

In early 2015, the Brenham Police Department (BPD) started receiving reports of suspected drug sales associated with a local business, the Platinum Cuts barbershop.  BPD began surveilling the Platinum Cuts parking lot.  On June 4, 2015, Investigator K. Mertz with the BPD narcotics division was watching the Platinum Cuts parking lot using a "polecam."[1]  Mertz observed appellant drive into the parking lot and park his car.  Mertz recognized appellant from several previous encounters.  Appellant remained in his vehicle for about ten minutes, which Mertz considered suspicious.  Appellant then met separately with two unknown individuals in the parking lot.  Mertz believed appellant sold drugs to these individuals but could not confirm the transactions due to the location of the polecam.  While appellant was still parked, Mertz called dispatch to check the status of appellant's driver's license and learned that it was suspended.

After approximately twenty minutes, appellant drove away.  Mertz instructed dispatch to have appellant stopped for driving with a suspended license.  Corporal D. Dudenhoeffer initiated the traffic stop.  Dudenhoeffer first activated his lights, then his siren.  Appellant continued driving for about forty seconds before finally stopping near 702 Old North Market Street in Brenham.  Dudenhoeffer approached appellant's vehicle with his gun drawn and opened the driver's side door.  Appellant's left hand was visible, but his right hand was hidden between the seat and center console.  When appellant removed his right hand, Dudenhoeffer noticed "a white powder or white paste" on appellant's hand that was later determined to be cocaine.  A search of appellant's vehicle revealed a large sum of cash in small denominations and 2.9 grams of cocaine.

---

[1] A "polecam" is a high-definition camera mounted on a utility pole, enabling police to remotely surveil the surrounding area via live video feed.

Appellant was indicted for possession of cocaine with intent to deliver, in an amount between one and four grams. The State gave notice it would seek a special finding that the offense occurred in a drug-free zone. *See id.* § 481.134. Specifically, the State alleged that appellant's offense occurred within 1,000 feet of the premises of a "playground."[2] *See id.* § 481.134(a)(3) (defining "playground" under the drug-free zone statute).

At trial, Dudenhoeffer testified he used Google Earth to verify that 702 Old North Market Street, the approximate address where appellant was stopped, was within 1,000 feet of a park known as Henderson Park. Dudenhoeffer estimated that the distance was between 300 and 400 feet. Dudenhoeffer further stated that no matter where appellant stopped on Old North Market Street, he would have been within 1,000 feet of Henderson Park. According to Dudenhoeffer, both where he initially tried to stop appellant and where appellant eventually stopped were in drug-free zones.

Mertz testified that he used both "Google Mapping" and a distance or traffic wheel to measure the distance between the approximate spot where appellant was stopped and Henderson Park. Mertz stated that this measurement was "[a]pproximately 300-some-odd feet." Mertz further testified that every point on Old North Market Street is within 1,000 feet of Henderson Park.

The State proffered, without objection, a Google Earth Street View image showing the northbound view from 702 Old North Market Street. Dudenhoeffer and

---

[2] At trial, the State presented evidence that appellant's stop occurred within 1,000 feet of two schools. On appeal, the State asserts that the location of the arrest in relation to the two schools "further cemented this location as a drug free zone." However, the special issue alleged and the jury found that appellant committed his offense "in a Drug Free Zone to-wit: in, on, or within 1,000 feet of a playground." We therefore do not consider the proximity of the two schools to the stop.

Mertz both identified Henderson Park and its parking lot in this image. Mertz testified that Henderson Park contained "[n]umerous slides—slides, monkey bars, [a] swing set, baseball fields[,]" and a basketball court.

The jury found appellant not guilty of possession with intent to deliver cocaine in an amount between one and four grams but found him guilty of the lesser offense of possession. The jury also found that appellant committed the offense in a drug-free zone. The State alleged in an enhancement paragraph that appellant had a prior felony conviction. The jury found the enhancement paragraph true, sentenced appellant to twenty years' confinement, and assessed a $20,000 fine.

Appellant timely appealed, arguing the evidence is legally insufficient to support the jury's special finding that he possessed cocaine in a drug-free zone. Specifically, appellant argues the State did not present legally sufficient evidence that: (1) Henderson Park contained at least three pieces of playground equipment, (2) Henderson Park was open to the public, and (3) appellant was within 1,000 feet of Henderson Park when he was stopped.

## II.   ANALYSIS

### A. Standard of review

When reviewing the legal sufficiency of the evidence to support a conviction, we "examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Price v. State*, 456 S.W.3d 342, 347 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In conducting our sufficiency review, we must consider all the evidence in the record, both direct and circumstantial, whether properly or improperly admitted. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see*

*Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988).

As the reviewing court, we may not substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* Giving proper deference to the factfinder's role, we uphold the jury's verdict unless a rational factfinder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

## B. Drug-free zone enhancement

Section 481.134 of the Texas Health and Safety Code prescribes enhanced sentencing guidelines if an individual commits a drug crime in a "drug-free zone"— i.e., within a certain distance of various statutorily defined facilities. *See* Tex. Health & Safety Code Ann. § 481.134. Here, the State alleged that appellant possessed cocaine within 1,000 feet of a "playground," as defined by section 481.134(a)(3). Subsection (a)(3) defines a "playground" as:

> any outdoor facility that is not on the premises of a school and that:
> > (A) is intended for recreation;
> > (B) is open to the public; and
> > (C) contains three or more play stations intended for the recreation of children, such as slides, swing sets, and teeterboards.

*Id.* § 481.134(a)(3). Where, as here, an individual commits an offense otherwise punishable under section 481.115(c) of the Texas Health and Safety Code within 1,000 feet of a playground, the minimum prison term increases by five years and the

maximum fine is doubled.  *See id.* §§ 481.115(c), 481.134(c).

## C. Sufficient evidence to support drug-free zone finding

*Playground equipment.*  Appellant first argues there is insufficient evidence that Henderson Park contained at least three pieces of playground equipment. Appellant characterizes Mertz's testimony as too "general" to support a drug-free zone enhancement.  Appellant also faults the State for not introducing any image showing the equipment.  We reject these arguments.

Mertz testified that Henderson Park contained "[n]umerous slides—slides, monkey bars, swing set, baseball fields[,]" and a basketball court.  Mertz mentioned specific types of playground equipment.  His use of the adjective "numerous" necessarily means that there were many slides.  *See* Webster's New World College Dictionary 1005 (5th ed. 2014) (defining "numerous" as "consisting of many persons or things" and "very many"); New Oxford American Dictionary 1205 (3d ed. 2010) (defining "numerous" as "great in number" and "many").

As for the lack of an image, nothing in the drug-free zone enhancement statute requires the State to prove the presence of three or more play stations using any particular kind of evidence.  Rather, section 481.135 provides that the State may use or introduce "any other evidence or testimony to establish any element of an offense for which punishment is increased under Section 481.134" and may introduce or rely on "any other map or diagram otherwise admissible."  Tex. Health & Safety Code Ann. § 481.135(d) (West 2017).  We conclude Mertz's testimony constitutes sufficient evidence that Henderson Park contained at least three play stations.  We overrule this subissue.

*Open to the public.*  Next, appellant argues the "[j]ury did not have any evidence that would have allowed them to find that Henderson Park was open to the public."  We disagree.  Without objection, Dudenhoeffer and Mertz both repeatedly

6

described the area close to where appellant was stopped as a "park." "Park" is not a technical or legal term of art, but instead is a general, well-known term, which the jury was free to give any meaning acceptable in common parlance. *See Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015) (jury is free to assign terms of common usage "any meaning that is acceptable in common parlance"). Pertinent definitions of "park" include "an area of public land; specif[ically] . . . an area in or near a city, usually laid out with walks, drives, playgrounds, etc., for public recreation" and "a large public green area in a town, used for recreation." Webster's New World College Dictionary 1062; New Oxford American Dictionary 1274; *see Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (appellate courts may articulate definitions of common terms in assessing sufficiency). In addition, Dudenhoeffer and Mertz identified Henderson Park and its parking lot on the Google Earth image of the approximate area of appellant's stop. The parking lot for Henderson Park—where the "pavement color change[d]" and was "darker"—was open and directly accessible from Old North Market Street.

Appellant relies on *Ingram v. State*, 213 S.W.3d 515 (Tex. App.—Texarkana 2007, no pet.). However, *Ingram* did not hold that there must be direct evidence that a facility is open to the public. The actual question was "whether the jury could reasonably infer from the evidence before it [that] the facility was public in nature." *Id.* at 518. *Ingram* also is distinguishable. In *Ingram*, there was evidence that the playground at issue "was part of a now-closed school and is currently operated and owned by" a private alumni organization. *Id.* Without other evidence in the record, the *Ingram* court could not "assume from the evidence provided, or from any reasonable inferences raised from that evidence, that the facility was one that was open to the public." *Id.* at 519. We overrule this subissue.

*Within 1,000 feet.* Finally, appellant argues there was insufficient evidence

7

that he was within 1,000 feet of Henderson Park when he was stopped with the cocaine. Dudenhoeffer and Mertz testified regarding appellant's proximity to Henderson Park when he was stopped. Dudenhoeffer testified that he stopped appellant "well under" 1,000 feet of Henderson Park. Dudenhoeffer stated that he verified this distance using Google Earth and it was within 300 to 400 feet. Mertz testified that he measured the distance using two different methods, "Google Mapping" and a distance or traffic wheel. When Mertz physically measured the distance using the wheel, he concluded that Henderson Park was "[a]pproximately 300-some-odd feet" from where appellant was stopped. Both Dudenhoeffer and Mertz testified that no point on Old North Market Street was farther than 1,000 feet from Henderson Park.

Appellant challenges Dudenhoeffer's measurement because Dudenhoeffer did not take any measurements on the day of the stop, did not know whether Google Earth's measurements are correct, and did not establish that the Google Earth image depicted the exact spot of the stop. Appellant challenges Mertz's measurement because Mertz measured the distance using the traffic wheel "from *roughly* where the traffic stop was to Henderson Park," took the measurement almost two years after the stop (two weeks before trial), and did not supplement his report with the measurement.

Nothing in the drug-free zone enhancement statute requires specific timing or perfectly precise details regarding proof of measurement. Again, section 481.135 permits the State to use or introduce "any other evidence or testimony to establish any element of an offense for which punishment is increased under Section 481.134" and introduce or rely on "any other map or diagram otherwise admissible." Tex. Health & Safety Code Ann. § 481.135(d). Appellant did not object to the State's use of the Google Earth image (containing post-stop copyright dates of 2016 and

2017), which Dudenhoeffer and Mertz stated fairly and accurately represented the area of the stop. Moreover, while the jury was certainly free to weigh the officers' testimony, as tested by appellant's cross-examination, we must presume the jury resolved any conflicting inferences in favor of the verdict. *See Jackson*, 443 U.S. at 326; *Price*, 456 S.W.3d at 347. We conclude there is sufficient evidence from which the jury reasonably could find that appellant was stopped with cocaine within 1,000 feet of Henderson Park. *See Peek v. State*, 494 S.W.3d 156, 167–68 (Tex. App.— Eastland 2015, pet. ref'd) (officer's testimony that defendant's stop occurred "directly across from the high school" and "definitely" within 1,000 feet of school was sufficient to support jury's special finding). We overrule this subissue.

## III. CONCLUSION

Having overruled appellant's issue, we affirm the trial court's judgment.


/s/    Marc W. Brown
        Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown.
Publish — TEX. R. APP. P. 47.2(b).

9