

# NUMBER 13-20-00098-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CLIFFORD WAYNE GARDNER,                                    Appellant,

v.

THE STATE OF TEXAS,                                    Appellee.

### On appeal from the 24th District Court of Jackson County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Perkes
Memorandum Opinion by Chief Justice Contreras**

Appellant Clifford Wayne Gardner appeals his conviction for manufacture or delivery of more than four grams but less than two hundred grams of cocaine in a drug-free zone, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(d), 481.134(a)(3), (c)(1). By two issues, Gardner argues (1) the search warrant

was not supported by probable cause, and (2) there was insufficient evidence to support a finding that he committed the offense in a drug-free zone. We affirm.

## I. BACKGROUND

In November 2018, Joel Price, an Investigator with the Jackson County Sheriff's Office, arrested Gardner after executing a search warrant on his home and seizing cocaine, among other narcotics and contraband. The State indicted Gardner for the underlying offense and alleged that he committed the offense within 1,000 feet of the playground at the First Baptist Church in Edna, Texas. The State also alleged Gardner had been previously convicted of five felonies.[1] *See* TEX. PENAL CODE ANN. § 12.42(c)(1) (enhancing the permissible punishment range for repeat felony offenders). Gardner then filed a motion to suppress the evidence obtained during the search of his house, arguing that he "was arrested without lawful warrant, probable cause[,] or other lawful authority . . . ."

In support of the search warrant, Price attested to the following in an affidavit:

> On Wednesday, 11/28/2018, at about 1345, I, Investigator Joel Price, of the Jackson County Sheriff's [Office] noticed a black four door car pull into the driveway at 311 Young Street in Edna, TX. Investigator Price began conducting surveillance on the home as Investigator Price was aware Clifford Wayne Gardner is selling cocaine at this location. Investigator Price was assisted in the investigation by Edna P[.]D. Officer Robert Chastain.

> From our position[,] we watched as three different people or parties went to the home and stayed briefly and left. One of the parties was identified as Rebecca Ann Ramirez, a w/f, arrived at the house at 1419 hours and left the residence at 1421. Rebecca Ann Ramirez then returned to the area pulling into a Shell gas station located in the 201 South Wells St, Edna, Texas.

---

[1] The State alleged Gardner had been previously convicted of (1) burglary of a building with intent to commit theft, (2) aggravated robbery, (3) burglary of a motor vehicle with intent to commit theft, (4) possession of a controlled substance, and (5) manufacture or delivery of a controlled substance in penalty group one.

I, Investigator Joel Price, approached Rebecca Ann Ramirez at 1435 hours and I identified myself as a police officer. I told her that I was in the area and watched her leave the trailer house at 311 Young Street a few minutes ago. I asked what she was doing there. She told me she went to see her friend "Seven" as she owed him $20.00 that she had previously borrowed.

I doubted Rebecca's words and told her that I was fully aware the man she knows as Seven is Clifford Wayne Gardner, a well-known drug dealer in Edna TX. Rebecca did not confirm or deny that. I asked Rebecca if she had purchased or was in possession of cocaine.

Rebecca requested that I search her and I did, however I did not locate any drugs. I asked Rebecca if I could search the car and she told me "no." With that I looked around the outside of her car and Rebecca stated "If I give it you can I leave". I asked if she was referring to the cocaine and she said, "yes". I agreed to those terms and Rebecca walked to the driver's side door, and reached under the driver's seat and handed me a small green zip lock bag, approximately 1" x 1", which contained a white powdery substance. I immediately recognized, through my training and experience, this substance powder to be cocaine.

I asked Rebecca where she got the illicit substance and she stated, "Seven". She stated I went there a few minutes ago and got it for a friend. With this information Rebecca Ramirez was released.

At the hearing on the motion to suppress, Ramirez testified that, on the day Gardner was arrested, Price approached her while she was parked at a gas station and spoke to her for less than five minutes. According to Ramirez, she did not know Gardner resided at the residence searched, and she did not recall telling Price that she knew Gardner as "Seven," that she had just left Gardner's residence, or that she got cocaine from Gardner. Ramirez also denied that she told Price she "bought" the cocaine from the residence. Price testified that Ramirez "did tell [him] that she got the cocaine from Clifford Gardner."

The trial court denied Gardner's motion without issuing findings of fact or conclusions of law, and Gardner pleaded not guilty and proceeded to trial. The jury found

3

Gardner guilty of the offense, that the offense was committed within a drug-free zone,[2] and that Gardner had been previously convicted of five other felonies. The jury assessed punishment at life imprisonment in the Texas Department of Criminal Justice Institutional Division and a $20,000 fine. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his second issue, which we address first, Gardner argues there was insufficient evidence to support a finding that he committed the offense in a drug-free zone.

## A. Standard of Review & Applicable Law

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theory of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

In a sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Chambers v. State*, 580 S.W.3d 149, 156 (Tex. Crim. App. 2019); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In our analysis, we defer to the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214

---

[2] Because the jury found Gardner committed the offense in a drug-free zone, the minimum term of imprisonment was increased by five years and the maximum fine for the offense was doubled. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(c).

4

S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record contains conflicting inferences, we presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 326).

If an individual commits a drug crime in a "drug-free zone"—i.e., within a certain distance of various statutorily defined facilities—then the sentencing guidelines are enhanced. *Curlee v. State*, No. 13-19-00237-CR, __ S.W.3d __, __, 2020 WL 3116332, at *3 (Tex. App.—Corpus Christ–Edinburg June 11, 2020, pet. granted); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.134. As relevant to this case, the area within 1,000 feet of a "playground," as defined under the statute, is a drug-free zone. TEX. HEALTH & SAFETY CODE ANN. §§ 481.134(c)(1). For the purpose of a drug-free zone, a "playground" is defined as any outdoor facility that is not on the premises of a school and that: (1) is intended for recreation; (2) is open to the public; and (3) contains three or more play stations intended for the recreation of children, such as slides, swing sets, and teeterboards. *Id.* § 481.134(a)(3); *Curlee*, __ S.W.3d at __, 2020 WL 3116332, at *3; *Graves v. State*, 557 S.W.3d 863, 866 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Ingram v. State*, 213 S.W.3d 515, 517–18 (Tex. App.—Texarkana 2007, no pet.).

**B.    Analysis**

Here, a hypothetically correct jury charge would instruct the jury to find appellant guilty if he knowingly possessed between four and two-hundred grams of cocaine with intent to deliver within 1,000 feet of a playground. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(d), 481.134(a)(3), (c)(1). The charge would further define "playground" as set forth above. *See id.* § 481.134(a)(3).

5

Gardner argues the evidence was insufficient because: (1) the First Baptist Church is a "school," excluding the playground at issue from the statutory definition of a "playground"; (2) the playground was not open to the public, as required for the definition of a "playground" under the statute; and (3) the offense was not committed within 1,000 feet of the playground. *See id.* § 481.134(a)(3), (c)(1).

## 1. First Baptist Church is Not a "School"

Gardner first argues that the First Baptist Church is a "school" and therefore the playground here does not fall under the necessary statutory definition of "playground." *See id.* Specifically, Gardner argues that the church is a "school" because it had a "day-care center." *See id.* § 481.134(a)(5) (defining a "school" as "a private or public elementary or secondary school or a day-care center, as defined by [§] 42.002, Human Resources Code").[3]

However, to be a "day-care center" under the statute, the location must provide care to seven or more children under the age of fourteen for less than twenty-four hours but more than two hours a day, at least three days a week. TEX. HUM. RES. CODE ANN. § 42.002(7); *see Haagensen v. State*, 346 S.W.3d 758, 763 (Tex. App.—Texarkana 2011, no pet.).[4] Here, Chief Deputy Rick Boone of the Jackson County Sheriff's Office testified that the church offers a day care service on Wednesday and Sundays, and no evidence was presented that day care service was provided any other day. Therefore, there was

---

[3] We note that the drug-free zone statute would still apply even if, as Gardner argues, the First Baptist Church was a "school." *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.134(a)(3) (excluding playgrounds located at schools from the definition of "playground" for purposes of drug-free zones), 481.134(c)(1) (providing for a drug free zone "in, on, or within 1,000 feet of the premises of a *school*, the premises of a public or private youth center, *or a playground*") (emphasis added).

[4] Gardner also incorrectly cites to § 42.003(3), (15), and (20) for his contention that the church was a "school"; however, these sections simply define the terms "child-care facility," "Religious organization," and "Before-school or after-school program," respectively. *See* TEX. HUMAN RESOURCES CODE ANN. § 42.002(3), (15), (20). Thus, they are inapplicable.

legally sufficient evidence to support a finding that the playground here was not on the premises of a school, *see* TEX. HUM. RES. CODE ANN. § 42.002(7), and we reject Gardner's argument.

### 2. Open to the Public

Gardner next argues there is insufficient evidence that the church's playground was open to the public as required for a "playground" under the statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(3)(B).

Price testified at trial that the gate to the playground had a chain or lock on it and that he did not know whether the playground was open to the public on the date of the offense. Price explained that he went by the playground some time after Gardner's arrest to take pictures for evidence and there seemed to be a chain locking the gate. Boone, however, testified that he is a member of the church and also "the person primarily responsible for security at the church," and that the playground was open to the public on the date of the offense. Boone explained that the playground was subsequently closed, as evidenced by the lock on the gate witnessed by Price, to prevent children from ruining the turf with their bicycles while surrounding schools were on break. The jury was free to believe Boone's explanation and statement that the playground was open to the public on the day of the offense, and we must defer to that determination. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) ("[R]econciliation of conflicts in evidence is within the exclusive province of the jury."); *see also Gonzalez*, 522 S.W.3d at 56–57. Thus, we reject this argument.

### 3. Within 1,000 Feet

Finally, Gardner argues there was no evidence that Gardner committed the offense within 1,000 feet of a playground. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(3), (c)(1). We disagree.

Here, Price testified that he measured the distance between Gardner's residence and the playground at the church to be between 609 and 610 feet. Price explained that he measured the distance using a measuring wheel known as a "Measure Master," and the State admitted a picture of the measuring wheel indicating a reading of 609 feet. This evidence was legally sufficient to support a finding that Gardner committed the offense within 1,000 feet of a playground. *See Chambers*, 580 S.W.3d at 156; *Ingram*, 213 S.W.3d at 518. Accordingly, we reject this argument.

### 4. Summary

We overrule Gardner's second issue.

### III.    SEARCH WARRANT

By his first issue, Gardner argues the search warrant was not supported by probable cause.

### A.    Standard of Review & Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial court is given almost complete deference in its determination of historical facts, especially if those are based on an assessment of credibility and demeanor. *Martinez*, 570 S.W.3d at 281. The same deference is afforded to the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions

8

depends on an evaluation of credibility and demeanor. *Id.* However, for mixed questions of law and fact that do not fall within that category, a reviewing court may conduct a de novo review. *Id.* Questions of law de novo are also reviewed de novo. *Id.*

When the trial court does not issue findings of fact, such as here, findings that support the trial court's ruling are implied if the evidence, viewed in the light most favorable to the ruling, supports those findings. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)*.* Almost total deference is given to the trial court's implied findings, especially those based on an evaluation of witness credibility and demeanor. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

When reviewing the magistrate's decision to issue a warrant, we apply a highly deferential standard, even in close cases. *State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017); *see State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Ex parte Jones*, 473 S.W.3d 850, 855 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). A search warrant must be accompanied by a sworn affidavit that sets forth substantial facts establishing probable cause. TEX. CODE CRIM. PROC. ANN. art. 18.01(b). In addition, the affidavit must set forth sufficient facts showing that (1) a specific offense has been committed; (2) the specifically described item to be seized constitutes evidence of the offense or evidence that a particular person committed the offense; and (3) the item is located at or on the person, place, or thing to be searched. *Id.* art. 18.01(c).

A court does not analyze the affidavit in a hyper-technical manner. *Rodriguez v. State*, 232 S.W.3d 55, 59 (Tex. Crim. App. 2007). Instead, we interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. *Id.* at 61. When in doubt, we defer to all reasonable inferences

that the magistrate could have made. *Id.* If the magistrate had a substantial basis for concluding that probable cause existed, then we will uphold the magistrate's probable cause determination. *McLain*, 337 S.W.3d at 271; *see Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Hyland v. State*, 574 S.W.3d 904, 910 (Tex. Crim. App. 2019); *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

"Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location." *Elrod*, 538 S.W.3d at 558 (quoting *Duarte*, 389 S.W.3d at 354); *see Gates*, 462 U.S. at 236. This is a flexible, nondemanding standard. *Elrod*, 538 S.W.3d at 558. We determine whether there is probable cause to support the issuance of a search warrant by considering only what is contained within the four corners of the search warrant affidavit. *Hyland*, 574 S.W.3d at 910–11; *see Elrod*, 538 S.W.3d at 554 ("[A]lthough the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inference based on those facts."). "[P]robable cause exists if the information given by the informant 'is corroborated, is a statement against penal interest, is consistent with information provided by other informants, is a detailed first-hand observation, *or* is coupled with an accurate prediction of the subject's future behavior." *Elrod*, 538 S.W.3d at 558 (quoting *Duarte*, 389 S.W.3d at 356) (emphasis in original).

## B. Analysis

Gardner first argues that "Ramirez[] never informed Investigator Price where she got the drugs," and therefore, Price's statement in the affidavit that Ramirez got the cocaine from Gardner's residence is "conclusory." Gardner bases this argument on Ramirez's testimony at the hearing on the motion to suppress. *See Hyland*, 574 S.W.3d

10

at 911 ("But the presumption of validity regarding the magistrate's probable cause determination may be overcome if the defendant can show the presence of false statements in the search warrant affidavit that were either made deliberately or with reckless disregard for the truth."). However, Price testified at the suppression hearing that Ramirez did in fact tell him that she got the cocaine from Gardner. The trial court was free to disbelieve Ramirez and believe Price, and we must defer to that determination. *See Turrubiate*, 399 S.W.3d at 150. Therefore, we reject this argument.

Gardner argues next that there is no evidence Ramirez was a credible informant. We note that Ramirez was a named informant in the affidavit, but she did not provide any detailed information regarding Gardner's criminal activity. "[W]hen a probable cause affidavit *specifies a named informant* as supplying the information upon which probable cause is based, the affidavit is sufficient *if it is sufficiently detailed* to suggest *direct knowledge* on the informant's part." *Elrod*, 538 S.W.3d at 559 (emphasis in original); *see, e.g.*, *Hennessy v. State*, 660 S.W.2d 87, 91 (Tex. Crim. App. 1983) ("Urquhart's credibility and reliability are established because he was a named informant, and because he gave detailed information about Barnes' activities which was substantially corroborated by independent police investigation."); *see also Duarte*, 389 S.W.3d at 356 ("The citizen-informer is presumed to speak with the voice of honesty and accuracy. The criminal snitch who is making a *quid pro quo* trade does not enjoy any such presumption; his motive is entirely self-serving."); *State v. Huddleston*, 387 S.W.3d 33, 38 (Tex. App.—Texarkana 2012, pet. ref'd) (noting that knowing an informant's name "is insufficient, by itself, to establish reliability").

Here, the affidavit provided that: Price watched Ramirez go to Gardner's residence; Ramirez left Gardner's residence two minutes after arriving; and, after Price

11

approached Ramirez at a gas station shortly thereafter, Ramirez handed Price cocaine and stated to him that she "got" the cocaine from Gardner. It is reasonable to infer that Ramirez obtained the cocaine from Gardner based on her statement that she "got" the cocaine from him. Furthermore, the affidavit provided that Price watched three individuals visit the residence briefly, one of which (Ramirez) admitted to getting cocaine from Gardner. This supports a reasonable inference that drugs were being sold out of the house and that there was a high probability that there was additional cocaine at the residence. *See, e.g.*, *Rodriguez*, 232 S.W.3d at 62–63 (concluding that magistrate could reasonably infer that a garage contained additional drugs based on information that a man went to the garage, walked out with a package, threw the package in his car, and was later stopped with a package containing drugs); *Bodin v. State*, 782 S.W.2d 258, 259–60 (Tex. App.—Houston [14th Dist.] 1989), *rev'd on other grounds*, 807 S.W.2d 313 (Tex. Crim. App. 1991) (concluding that search warrant based on an informant's controlled buy provided reasonable basis to infer that additional drugs would be found on the premises); *see also Moreno v. State*, 415 S.W.3d 284, 288 (Tex. Crim. App. 2013) (involving similar scenario to *Rodriguez* but based on confidential informant); *Cobbs v. State*, No. 09-10-00490-CR, 2011 WL 3925672, at *4–5 (Tex. App.—Beaumont Aug. 24, 2011, pet. ref'd) (mem. op., not designated for publication) ("An affidavit that states an informant purchased contraband at a stated residence gives rise to an inference that contraband was inside the residence and may establish probable cause to support a warrant."). Ramirez's reliability was also supported by her actions and statements against her penal interests by admitting to having cocaine, giving it to Price, and conceding she "got" it from Gardner. *See Elrod*, 538 S.W.3d at 559 & n.31; *Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) ("An admission against penal

interest, even by a first-time informant, is a factor indicating reliability."); *see also United States v. Buckley*, 4 F.3d 552, 554, 556–57 (7th Cir. 1993) (noting that informant—who wanted to curry favor with the officer who pulled her over for a traffic violation and discovered cocaine—spoke against her penal interest when admitting that she purchased cocaine from the defendants, and such actions indicated credibility); *Gonzales v. State*, No. 07-15-00450-CR, 2016 WL 6242828, at *3 (Tex. App.—Amarillo Oct. 25, 2016 pet. ref'd) (mem. op., not designated for publication) (noting that informant's admission that he possessed methamphetamine and purchased it from appellant were statements against penal interest that supported the informant's reliability). Finally, Ramirez's credibility was also supported by Price's independent observation that corroborated Ramirez's statement that she visited Gardner's home "a few minutes" before Price approached her. *See Elrod*, 538 S.W.3d at 558; *Moreno v. State*, 415 SW.3d 284, 288 (Tex. Crim. App. 2013); *see also Gallardo v. State*, No. 03-10-00288-CR, 2011 WL 1991944, at *3 (Tex. App.—Austin May 11, 2011, no pet.) (mem. op., not designated for publication) ("The statements they gave to [police] were corroborated by the officer's observations of their activities on the days in question and by the other information [police] had accumulated during [their] investigation.").

Our duty is to simply ensure that the magistrate had a substantial basis for concluding that probable cause existed. *See Gates*, 462 U.S. at 238–39. Having in mind the great deference we owe a magistrate's determination of probable cause, we conclude the affidavit here gave the magistrate reason to find Ramirez's statements to Price credible, and considering all the circumstances, a substantial basis to conclude there was a fair probability that cocaine would be found at Gardner's residence. *See Hyland*, 574 S.W.3d at 911; *Elrod*, 538 S.W.3d at 559; *see also Lewis v. State*, No. 11-16-00227-CR,

13

2018 WL 4016375, at *5–6 (Tex. App.—Eastland Aug. 23, 2018, no pet.) (mem. op., not designated for publication).[5]

We overrule Gardner's first issue.

## IV. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of December, 2020.

---

[5] Gardner cites an opinion from our sister court in Houston in arguing that Ramirez's tip is not enough to establish probable cause. *See State v. Griggs*, 352 S.W.3d 297, 302 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). In *Griggs*, the Houston court reversed the trial court's suppression of evidence after concluding there was probable cause to search a residence for narcotics based on the facts in the supporting affidavit. *See id.* at 306. Gardner states that the Houston court found probable cause in *Griggs* because the officer's affidavit provided that the officers executed a controlled buy in front of the residence to be searched in addition to "(1) [receiving] information that crack cocaine was being stored and sold at the specific residence; (2) the informant [purchasing] crack cocaine from appellee at the residence 'within 48 hours'; and (3) the informant [being] invited to make future purchases." Based on these facts present in the *Griggs* case, Gardner argues that the officers here did not corroborate Ramirez's tip to the same extent and that, therefore, there was no probable cause to search. We are not persuaded. The collective actions taken by the officers in *Griggs* are not the sole way for establishing probable cause to issue a search warrant, and we reject this argument for the reasons set forth above.