

# NUMBER 13-19-00237-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DALLAS SHANE CURLEE,                                              Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 24th District Court
### of Jackson County, Texas.

# MEMORANDUM OPINION
### Before Justices Benavides, Perkes, and Tijerina
### Memorandum Opinion by Justice Benavides

Appellant Dallas Shane Curlee appeals his conviction for possession of a controlled substance in penalty group one, methamphetamine, less than four grams, in a drug free zone, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). Curlee's punishment level was enhanced to that of a second-degree felony based on his prior convictions. *See* TEX. PENAL CODE ANN. § 12.42(a). Curlee challenges his conviction

on three grounds: (1) the evidence is insufficient to establish that he had possession of the methamphetamine; (2) the evidence is insufficient to establish the requisites of the drug-free zone enhancement; and (3) the trial court erred by failing to hold a hearing on Curlee's motion for new trial. We affirm.

## I. BACKGROUND

Jailer Dave Thedford testified at trial that Hillary Hammond went to the Jackson County Jail on December 7, 2017, to visit inmate Anthony Havens. She brought with her a plastic Wal-Mart bag with five boxes of contact lenses. When Thedford searched the bag, he found four utility razor blades in one of the contact lenses boxes. Hammond claimed she did not intend to bring the razor blades into the jail; they were for the utility knife on her keychain. She explained she purchased them at the same time as some other items from Wal-Mart and the receipt was in her van which was parked out front. Razors are contraband in the jail and bringing them into the jail is a felony offense. *See* TEX. PENAL CODE ANN. § 38.11(a)(2), (g).

Jackson County Sheriff's Investigator Gary Wayne Smejkal and Jail Captain Jim Omecinski accompanied Hammond to her van. When they approached the van, neither of the officers saw anyone sitting in the vehicle. Once Hammond opened the driver's door, they saw a man on the bench seat in the back who was later identified as Curlee. Hammond was under arrest for bringing contraband into the jail and she asked if the van could be released to Curlee. Smejkal provisionally agreed and asked Curlee for his driver's license. Smejkal checked to determine whether Curlee's license was valid and whether there were any warrants. Because there was a warrant for his arrest, Smejkal

2

handcuffed Curlee and placed him under arrest as well. Curlee said, that they should not go into the van "unless they brought a drug dog." Smejkal and Investigator Jeremy Crull inventoried the van before it was impounded.

During the inventory search of the van, Smejkal found a black baseball cap on the floor in front of the rear bench seat where Curlee had been seated. It was upside down and was being used to hold a pack of Marlboro Red cigarettes in a box, a cell phone belonging to Curlee, a lottery ticket, a glass pipe, a syringe, a Recon 1 pocketknife, and a propane torch igniter. Inside the Marlboro Red box were three small yellow bags that contained a white crystal substance that was later determined to be methamphetamine. There was also a brown purse that belonged to Hammond in the front of the van between the seats. The purse contained some cash, a glass pipe, and several small baggies that contained methamphetamine.

At trial, a chemist from the Department of Public Safety testified that she tested the substance found in the baggies inside the Marlboro Red box and it was methamphetamine with a net weight of approximately 1.97 grams.

Smejkal further testified that he investigated whether a church playground across the street from where Hammond's van was parked and on the next block was within 1000 feet of the van. He performed a Google Map search which indicated the distance between the van and the playground was 547.38 feet. He testified that the church playground was kept unlocked. Later during the trial, he testified regarding his further investigation of the playground gates, that only one of the gates was capable of being locked.

Curlee was indicted for possession of the methamphetamine in a drug-free zone because Hammond's van was within 1000 feet of a church playground that is open to the public. He was convicted at trial and the jury sentenced him to twenty years' imprisonment in the Texas Department of Corrections–Institutional Division. Curlee appeals from that judgment.

## II. SUFFICIENCY OF THE EVIDENCE

Curlee's first two issues challenge the sufficiency of the evidence of (1) possession of the methamphetamine found in the Marlboro Red cigarette pack and (2) the elements of the drug free zone enhancement. Both are measured by the same sufficiency test. *See Young v. State* 14 S.W.3d 748, 753 (Tex. Crim. App. 2000).

### A. Standard of Review

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *In re Winship*, 397 U.S. 358, 361 (1970)). We apply the sufficiency standard from *Jackson*, which requires the reviewing court to "view[] the evidence in the light most favorable to the prosecution," to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319). When a reviewing court views the evidence in the light most favorable to the verdict, it "is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Brooks*, 323 S.W.3d at 899; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S.

at 318–19). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. If the record supports conflicting inferences, we presume that the fact finder resolved the conflict in favor of the prosecution and defer to that resolution. *Garcia v. State*, 367 S.W.3d 684, 686–87 (Tex. Crim. App. 2012); *Brooks*, 323 S.W.3d at 899.

"Constitutional review of the sufficiency of the evidence is measured against the elements of the criminal offense as defined by state law." *Fuller v.* State, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (citing *Jackson*, 443 U.S. at 324 n.16). However, review of the "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Garcia*, 367 S.W.3d at 687 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

## B.    Methamphetamine

The methamphetamine at issue was found inside the box of Marlboro Reds, which was inside the upside down baseball cap on the floorboard of the van in front of the bench seat where Curlee was seated when the officers took Hammond to her van. Curlee was at that time an admitted smoker and IV user of methamphetamine. There was a glass pipe and syringe in the cap as well as a propane igniter, a pocketknife, Curlee's phone, and a lottery ticket.

Hammond testified that she left her purse in the car in which there was some methamphetamine, a glass pipe, and some cash. She had taken her phone and keys into the jail with her and put them in a lock box before going to see inmate Havens. Hammond

was charged with two counts of taking a prohibited weapon into a correctional facility, each a third-degree felony with a recommended sentence of five years' imprisonment. Hammond was later charged with possession of less than a gram of methamphetamine based upon the drugs in her purse. She testified at Curlee's trial that she smoked cigarettes, Marlboro Reds in a box, and the methamphetamine in the cigarette box belonged to her. Curlee would not have known she had it. She claimed that before she went into the jail, she had the syringe in her bra and moved to the back of the van to remove everything from her person anything she could not take into the jail.

Curlee gave a statement the day he was arrested, after he waived his *Miranda*[1] rights. He volunteered to "take the weight" of the drugs in the purse if Hammond's contraband charge was dropped. He stated that he wanted to protect Hammond so she could be home at Christmas with her little girl, and that his mom would bail her out. However, Curlee acknowledged that the drugs in her purse were not credibly his, especially since there was a separate pipe in her purse.

Despite Hammond's testimony, there was evidence from which the jury could have believed that Curlee had possession of the drugs in the cigarette box: the drugs were in close proximity to him and his possessions such as the phone, the jury could have believed that the pipe and syringe were his in light of his admitted use and Hammond's separate possession of a glass pipe, and his statement about bringing a drug dog to search the van. When the evidence is conflicting, the jury is entitled to decide which witnesses to believe. *See Garcia*, 367 S.W.3d at 686–87.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 467–68 (1966).

We overrule Curlee's first issue.

## C.    Drug-Free Zone

Curlee next challenges the sufficiency of the evidence to prove the enhance for a drug-free zone. The legislature prescribes enhanced sentencing guidelines if an individual commits a drug crime in a "drug-free zone"—i.e., within a certain distance of various statutorily defined facilities. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134. Here, the State alleged that Curlee possessed methamphetamine within 1,000 feet of a "playground," as defined by § 481.134(a)(3). *Id.* Subsection (a)(3) defines a "playground" as: any outdoor facility that is not on the premises of a school and that: (A) is intended for recreation; (B) is open to the public; and (C) contains three or more play stations intended for the recreation of children, such as slides, swing sets, and teeterboards. *Id.; Graves v. State*, 557 S.W.3d 863, 866 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

According to Smejkal's trial testimony, there was a church playground one block from where Hammond's van was parked and across the street. According to Google Maps, the distance was 547.38 feet from Hammond's van. Smejkal also measured the distance of 539.2 feet from Hammond's parking space to the middle of the playground with a rolling tape-measure he borrowed from the City of Edna. He did not calibrate the rolling tape and could not testify to its accuracy. Smejkal personally confirmed that none of the various gates to the playground were locked except one.

The photographs in evidence demonstrate a large play area with two slides, a playscape, a tube, and monkey bars. The large grassy area that surrounds that playground is fenced with multiple entrances, only one of which is capable of being

7

locked. Both measurements of the distance between where Hammond's van was parked and where the playground is located, one-and-a-half blocks away, equated to less than 550 feet. The standard for finding the distance to be a drug-free zone is within 1000 feet. The jury's answer is supported by legally sufficient evidence.

We overrule Curlee's second issue.

## III.    MOTION FOR NEW TRIAL

By his third issue, Curlee argues that the trial court erred by failing to hold a hearing on his motion for new trial, which he timely presented to the trial court, and requested a hearing. Curlee's motion for new trial complained in part of "outside influence" on the jury based on the notation in Jury Note 3, "Talked to Pastor."

## A.    Standard of Review

A trial court's denial of a hearing on a motion for new trial is reviewed for an abuse of discretion. *Hobbs v. State*, 298 S.W.3d 193, 200 (Tex. Crim. App. 2009). The trial court's decision is reversed only if it was outside the zone of reasonable disagreement. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The purposes of a new trial hearing are to (1) determine whether the case should be retried; or (2) complete the record for presenting issues on appeal. *Hobbs*, 298 S.W.3d at 199. A hearing on a motion for new trial is not an absolute right. *Id.*; *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). A trial court abuses its discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters that are not determinable from the record; and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Hobbs*, 298 S.W.3d at 199; *see also Bolivar v. State*, No. 13-14-00157-CR, 2016

8

WL 4939384, at *17 (Tex. App.—Corpus Christi–Edinburg Sept. 15, 2016, pet. ref'd) (mem. op.) (not designated for publication).

## B. Discussion

During Investigator Smejkal's testimony regarding the church playground, he was asked by the prosecutor how he knew the playground was unlocked, and he replied that he spoke to the pastor. Defense counsel objected to hearsay and the trial court sustained the objection. The trial court responded after discussing the jury's note with the prosecutor and defense counsel. The trial judge told the jury in writing that he and the court reporter would look for the testimony over the lunch break. As the trial court discussed with counsel in Curlee's presence, the response, "Talked to the Pastor," was hearsay to which an objection had been sustained and would not be provided to the jurors when they came back into the courtroom.[2]

Appellate counsel's motion for new trial claims an outside influence on the jury that did not actually occur. Instead the evidence he relies on refers to an evidentiary matter that occurred during trial and not outside the record. As a result, the trial court was not required to hold a hearing. *See Sandoval v. State*, 929 S.W.2d 34, 36 (Tex. App.—Corpus Christi–Edinburg 1996, pet. ref'd) (holding that trial court did not abuse its discretion in

---

[2] Before the trial court brought the jury back in to read the requested testimony, he advised the parties:

THE COURT: Back on the record after a question from the jury about read-back. Here is the question that was asked: "Please provide Investigator Smejkal's testimony regarding church/playground and locks. Testimony was 4/23/19, particularly on whether public property or not, signed Carley Smith. Also talked with pastor." Okay. I'm going to go through —I've searched the record. Anything that has to do with that question I'm going to read to the jury. I will tell everybody on the—"also talked with pastor," that's—will not come in because the question was, "How do you—Smejkal, how do you know that it's public property?" And Smejkal said, "I talked with the pastor." The objection was hearsay, and it was sustained, so that won't come in.

denying hearing on motion for new trial where reasonable grounds to believe a new trial was warranted were not shown). Thus, the trial court did not abuse its discretion by denying the motion without a hearing. *Id.*

We overrule Curlee's third issue.

## IV.    CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
30th day of April, 2020.